STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro *Se*

FILED
2025 JUL 22
CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| STEVEN HUBER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES GOVERNMENT, et. al.<br><br>Defendants. | **PLAINTIFF'S MOTION FOR PRELIMINARY INJUCTION AND MEMORANDUM OF LAW IN SUPPORT**<br><br>Case No: 2:25-cv-00592<br><br>Judge: Cecilia M. Romero |

## I. INTRODUCTION

1.  COMES NOW, Steven Huber, Plaintiff Pro *Se*, under Rule 65, hereby moves this Court for an order granting a Preliminary Injunction enjoining Defendants, their agents, officers, and employees, from:

    a. Continuing or threatening any enforcement, trespass, or other interference against Plaintiff's access to his land using the 414-foot road extending from the Lapoint Bench Road at 40°22'20"N 109°44'34"W to Plaintiff's section of land located at the southwest quarter of the northwest quarter of Section 24.

  b. Forcing Plaintiff's participation in BLM's Right-of-Way Program fees, rent, or any restriction inconsistent with Plaintiff's vested rights.

  c. Initiating, proceeding, or enforcing any trespass or liability actions regarding Plaintiff's property rights and access to allow this Court to fully litigate the merits of this case.

  d. Further interfering in any manner with Plaintiff's access rights.

  e. Any other actions the Court deems just and proper.

  2. The Defendants' unfounded trespass notices and threatened enforcement actions are not merely an inconvenience; they strike at the heart of the Plaintiff's ability to use and enjoy his land, causing irreparable harm. Without immediate injunctive relief, the Plaintiff faces the loss of crucial development opportunities, the potential economic ruin of his farming operations, and the fundamental inability to access his land for agricultural improvement and cultivation. This is not a temporary setback; it is the potential destruction of a way of life and the devaluation of a significant asset. This accompanying Memorandum of Law, Plaintiff Representations to the Court, and exhibits filed with Plaintiff's Complaint supports this Motion.

## II. FACTUAL BACKGROUND

  3. Plaintiff owns approximately 680 acres of land in Township 5 South, Range 19 East, Utah, including portions of Sections 23, 24, 25, and 26. These parcels were originally granted under the Homestead Act of 1862 (Complaint ¶ 27). The patents conveyed to Plaintiff's predecessors in title necessarily included rights-of-way and access, as many of these parcels—particularly the 160 acres originally patented to Leonard Farnsworth (Patent No. 1018263) (Comp. Exhibit 1 at Page 4)—were landlocked at the time of severance from federal ownership

(Complaint ¶ 28). Given the lack of alternative access and the historical context of the Homestead Act, federal law recognizes these rights as both implied easements by necessity (Complaint ¶ 33) and rights-of-way established under R.S. 2477 (Complaint ¶ 49), ensuring the Plaintiff's ability to utilize land originally intended for settlement and development.

  4. Plaintiff's land is undeniably landlocked, hemmed in by surrounding private, state, and federal holdings, resulting in a complete lack of reasonable access (Complaint ¶ 28). The Lapoint Bench Road, a designated Class D Road crossing public lands in Sections 24 and 25, is not simply a convenient path; it represents the only practical route that has historically provided access to the property (Complaint ¶¶ 29, 51). This road, therefore, is not merely important, but critical, as it forms the basis of the Plaintiff's established right-of-way, implicitly conveyed with the original Homestead Act patents (Complaint ¶ 48-51)

  5. In the springtime of 2023, Plaintiff constructed a 414-foot road extending from Lapoint Bench Road to reach the southwest quarter of the northwest quarter of Section 24 out of necessity, to facilitate access for farming equipment and development (Comp. Exhibit 5 – OnX Pic of Road).

  6. Access to the 160 acres granted to Leonard Farnsworth (Patent No. 1018263, Complaint Exhibit 1 at page 4) is the focal point of this dispute. The parcel's isolation is exacerbated by the fact that approximately 20 acres are situated atop the Lapoint Bench, making the disputed road the only viable access point (Complaint ¶ 35). At the time of the original patent, no permission was required to improve easements or construct new ones; to the contrary, R.S. 2477 reflected a clear Congressional policy of encouraging road construction across public lands to facilitate development (Complaint ¶ 49). The Plaintiff's construction, therefore, not only

avoided severing or alienating any part of the land (Complaint ¶ 35) but also directly advanced the original intent of R.S. 2477 and the Homestead Act, which sought to ensure access and development of these lands.

7. Despite exercising and establishing these rights, Plaintiff has recently been subjected to unlawful actions by Defendants—including the issuance of a Notice of Trespass on June 2, 2025—alleging unauthorized use of public land (Comp. Exhibit 6 – Notice of Trespass dated June 2, 2025).

8. Plaintiff responded to this notice, asserting his vested property rights, which include rights-of-way and easements obtained through federal patents issued prior to 1976, with specific protections under federal law (Comp. Exhibit 7 – Response to NOT dated June 16, 2025).

9. On July 2, 2025, rather than rescinding the baseless trespass notice, the Defendants doubled down on their unlawful actions by attempting to coerce the Plaintiff into the BLM's "Right-of-Way Program." The Defendants proposed to drop the trespass action only if Plaintiff submitted to the process and paid fees totaling $3,618: a "nonrefundable application fee" of $278 for "processing and monitoring," $1,113 for "related fees," and a "monitoring fee" of $2,227—fees the Defendant fabricated and used to impose terms to a legal right the Plaintiff already possessed (Complaint ¶ 40-45). The Defendants are attempting to extort fees for access the Plaintiff already possesses—which, per their estimates, would become an ongoing and ever-increasing annual obligation just to access his property (Complaint ¶¶ 42-46, Exhibits 8, 9, 10, 11)

10. The Plaintiff, in a demonstration of unwavering resolve, refused to yield to the Defendants' unlawful and extortionate demands. He reiterated that he possesses an undeniable right to access the parcel; it is and was the only way access the aliquot of Section 24 (Complaint ¶ 35). Ignoring the clear language of the 1928 patent that expressly granted Leonard Farnsworth and his heirs the land "with the appurtenances thereof" guaranteeing their access to it, (Complaint ¶ 33) the Defendants brazenly declared an "impasse" and announced their intention to pursue their baseless trespass actions. These actions, if allowed to stand, would unjustly enrich the Defendants at the Plaintiff's expense and constitute a clear attempt to steal a vested property right that is essential to the use and enjoyment of his land.

11. The Defendants' actions pose an immediate and serious threat to the Plaintiff's fundamental right to lawful access, jeopardizing his ability to use and enjoy his property. This unlawful threat irreparably deprives the Plaintiff of this legally protected access and has no remedy at law except to repurchase his vested rights or face trespass proceedings and liabilities, undermining federal and Constitutional protections of property rights. Therefore, The Plaintiff seeks immediate injunctive relief, which is absolutely critical to avert further infringement of his access rights and to halt the Defendants' ongoing and unlawful actions.

### III. ARGUMENT

#### A. Standard for Preliminary Injunction

12. A preliminary injunction is warranted where the Plaintiff demonstrates: (1) a likelihood of success on the merits; (2) that Plaintiff will suffer irreparable harm without injunctive relief; (3) that the balance of equities favors granting the injunctions; and (4) that an

injunction is in the public interest. See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009)

### B. Plaintiff Demonstrates a Likelihood of Success on the Merits

13. *Utah v. Andrus*, 486 F. Supp. 995 (D. Utah 1979), sets the scene and shows that the Plaintiff has a high likelihood of succeeding here, the main reason has is he has a vested, implied easement by necessity under federal law and must be granted as an existing condition. To support this point is recognizing that "[u]nless a right of access is inferred, the very purpose of the school trust lands would fail" (*Id*. at 1002). The reality for Plaintiff is: his property, like the school trust lands in *Andrus*, becomes economically worthless without access, and is made even more clear in the Complaint as his rights diminish (Complaint ¶ 53-57). The United States can't ignore this and cannot override what has always been and what they have created, especially after they explicitly state to have no conditions for it because it will hinder their goal and foster settlement and development under the Homestead Act (Complaint ¶¶ 48-50).

14. Also, what is critical, the *Andrus* case, makes clear that school trust lands should be liberally construed (*Id*. at 1002), further emphasizing Plaintiffs need to be able to access and maintain the existing land without conditions or hindrances. The landlocked status, combined with the Defendants' denial of access, strips the property of its economic utility, effectively nullifying the original land patent.

15. Crucially, the Defendants cannot invoke FLPMA to justify denying the Plaintiff access. While FLPMA does provide for the management and protection of public lands, it expressly preserves existing valid rights (Complaint ¶ 49). As the court in *Andrus* emphasized,

the BLM's authority is limited to preventing permanent impairment of potential wilderness values; it cannot prohibit access that renders economic development unviable (*Id.* at 1011).

16. Tellingly, the Defendants have made it clear that if the Plaintiff simply agrees to pay their exorbitant fees and participate in the Right-of-Way program, then his access will be "all good," and the supposed threat to wilderness values will magically disappear. The action shows their true intent, which is not protection but an extraction from the Plaintiff for his rights.

### C. Irreparable Harm

17. The Plaintiff is not simply seeking to protect his economic interests; he is fighting to safeguard his constitutional rights to property, access, and due process. The ongoing deprivation of these fundamental rights, even for a single day, constitutes irreparable harm that cannot be adequately remedied by monetary damage alone.

18. The Defendants' actions have created a chilling effect, deterring the Plaintiff from exercising his lawful right to access, use, and develop his property. This ongoing infringement of constitutional rights inflicts harm that grows with each passing day, making it increasingly difficult to restore the Plaintiff to his rightful position.

19. This Court has a duty to protect fundamental constitutional rights, and to act swiftly when those rights are threatened. The longer the Defendants are permitted to continue their unlawful conduct, the greater the harm to the Plaintiff and the greater the erosion of constitutional principles.

20. The ongoing deprivation of the Plaintiff's access rights constitutes irreparable harm because it undermines the very essence of civil liberty. As *Marbury v. Madison*, 5 U.S. 137, 163, 1 Cranch 137 (1803), makes clear "The very essence of civil liberty certainly consists

in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection." The Plaintiff has a right to claim protection here as he is being deprived of life, liberty, and property without due process. This ongoing infringement on the Plaintiff's fundamental rights demands immediate injunctive relief to restore his access and protect the very foundations of civil liberty.

21. It is beyond dispute that Leonard Farnsworth, the original recipient of the land patent, faced no such obstacles: he was never required to pay fees or seek permission from the federal government to access his land or build roads—access was a vested, implied part of his ownership, a right that cannot be taken away without just compensation. This is the essence of the case *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922), and this is what is the case here. That vested right to unimpeded access belongs to the Plaintiff today as it belonged to the original patentee.

22. The government can't change the rules that take away Plaintiff's property rights. That right is supposed to exist with the patent for its entire history of that land—however, Defendants' demands now seek to extract a monetary fee, effectively requiring him to purchase a right that he already has. The Defendants' actions are a regulatory taking akin to that in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922), because they substantially diminish the value of Plaintiff's land by imposing this barrier to access the land, a property right long since established in 1928. Because this interference will permanently disrupt Plaintiff's ability to develop his land, monetary damage alone would be insufficient to remedy the harm, which is both immediate and ongoing.

### D. Balance of Equities

23.     The balance of equities weighs heavily in favor of Plaintiff, whose long-held property rights and settled expectations would be upended by the Defendants' actions. It is absurd and not in the public interest to now impose conditions for accessing land via public land that are necessary for access that goes far beyond historical requirements.

24.     Defendants are taking contradictory positions by: (1) disputing Plaintiff's valid claim to an easement by necessity but (2) then improperly seeking to extract fees and rent from Plaintiff for that very access they claim he does not possess! The court ruled the government cannot use easements or access rights to interfere with economic development. As in *Leo Sheep Co. v. United States*, 440 U.S. 668 (1979), where the Court refused to find an implied easement for the government's benefit, here there is an explicit granting of the land with appurtenances to go with it. This is not an implicit reservation. With the Homestead Act, Congress would allow farmers to reach their farms. Now this act, if left the hands of the current Defendants, would do the very opposite—render it as if it never existed—by the imposing of rules. The absence of any express reservation when Leonard Farnsworth was granted his patent in 1928 is compelling evidence that no such restriction was ever intended to burden Plaintiff's property (Complaint ¶ 48-50). The original expectation does not have conditions, permissions, fees, or rents to access the land as Defendants now say they do.

25.     The Defendants are seeking to impose restrictions on Plaintiff's land, effectively claiming an implied easement. As in *Leo Sheep Co.*, where the Court refused to find an implied easement for the government's benefit, "The Government does not claim that there is any express reservation of an easement in the Union Pacific Act" (citation omitted). The absence of any such

9

express reservation when Leonard Farnsworth was granted his patent is compelling evidence that no such restriction was ever intended to burden Plaintiff's property (Complaint ¶ 48).

26. Any potential inconvenience to the Defendants—namely, a mere delay in implementing their land management agenda while this case proceeds— pales in comparison to the significant harm and deprivation life, liberty and happiness experienced and endured by the Plaintiff, especially by means of the unlawful tactics Defendants have used to install fear into the Plaintiff (Complaint ¶¶ 40-46). These interests override the Defendants' interests, especially given the established property rights and interests of the Plaintiff. Historically, generations of land patents have been issued without any express reservation of access.

27. As recognized in *Leo Sheep Co.*, the government's power of eminent domain is the appropriate mechanism if interference with property rights is necessary or if economic conditions must be set. Here, the easement is on public land and as Plaintiff is a "member of the public," he has a right to use this land to access his property. Instead of respecting the Plaintiff's pre-existing rights, the Defendants seek to monetize them—effectively forcing the Plaintiff to repurchase rights he already owns.

### E. Public Interest

28. Issuing the preliminary injunction aligns with the public interest in preserving lawful property rights, ensuring government actions comply with constitutional and federal statutes, and promoting sound land management policies. The Defendants' actions, by threatening Plaintiff's right of access, directly undermine established principles recognized in the case *Utah v. Andrus*, 486 F. Supp. 995 (D. Utah 1979). In that case, which addressed a comparable issue of access to landlocked parcels, the court emphasized the need to balance

environmental protection with economic development and uphold existing land rights (*Id*. at 1002).

29.     Here, granting the preliminary injunction serves the public interest by upholding the long-standing principles of protecting lawful property rights, encouraging responsible land use, settlement, and development consistent with federal policies that ensure land access and utilization (Complaint ¶¶ 46-49).

30.     Furthermore, preventing unlawful interference with property rights and access safeguards the integrity of federal land management policies and upholds the constitutional protections afforded to landowners against governmental overreach. Therefore, the public interest favors granting the requested injunction to prevent ongoing harm and uphold the rule of law, in accordance with the legal precedent established in *Utah v. Andrus*.

**F. The Court Can Grant Preliminary Relief**

31.     Because the Plaintiff has a brought a cause of action under Section 18 U.S.C. § 1964, it would be appropriate for the Court to impose reasonable restrictions on the future activities of the Defendants prohibiting them from continuing any type of behavior that constitutes racketeering activity as provided by Section 18 U.S.C. § 1964(a). Such measures would help alleviate the fear and ongoing harm that the Plaintiff is currently experiencing due to the Defendants' alleged misconduct, and are necessary to prevent irreparable harm to the Plaintiff's rights and well-being.

> (a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged

in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

Quoting Section 18 U.S.C. § 1964(a).

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated, Plaintiff respectfully requests that the Court:

32. Grant a preliminary injunction enjoining Defendants, their agents, officers, and employees from:

    a. Continuing or threatening any enforcement, trespass, or other interference against Plaintiff's access to his land using the 414-foot road extending from the Lapoint Bench Road at 40°22'20"N 109°44'34"W to Plaintiff's section of land located at the southwest quarter of the northwest quarter of Section 24.

    b. Forcing Plaintiff's participation in BLM's Right-of-Way Program fees, rent, or any restriction inconsistent with Plaintiff's vested rights.

    c. Initiating, proceeding, or enforcing any trespass or liability actions regarding Plaintiff's property rights and access to allow this Court to fully litigate the merits of this case.

    d. Further interfering in any manner with Plaintiff's access rights.

33. Set a hearing on this motion at the earliest possible date.

34. Grant such other relief as the Court deems proper and just.

### G.  REPRESENATIONS TO THE COURT (Rule 11)

I HEREBY CERTIFY that, under Federal Rule of Civil Procedure 11 and applicable local rules, the foregoing motion and memorandum in support is presented in good faith, for proper purposes, and based on existing law and factual support, and that to the best of my knowledge, information, and belief, formed after reasonable inquiry, the statements contained herein are true and correct.

Dated: July 22, 2025

Respectfully submitted,

  /s/ Steven Huber

STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro *Se*