STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro *Se*

FILED
2025 AUG 7
CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STEVEN HUBER, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES GOVERNMENT, et. al. <br><br> Defendants. | **PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION AND OBJECTION TO MAGISTRATE JUDGE'S ORDER [26] GRANTING [25] DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Case No: 2:25-cv-00592 – TS - CMR <br><br> Judge: Ted Stewart |

## I. INTRODUCTION

1. COMES NOW, the Platiniff, STEVEN HUBER, Plaintiff Pros *Se*, hereby moves this Court under Rule 65(a)(2) of the Federal Rules of Civil Procedure for an order granting a preliminary injunction against the Defendants. Additionally, the Plaintiff objects to Magistrate Judge Cecilia M. Romero's ("Romero") order purporting to approve the Defendant's Motion for an extension of time to respond to Plaintiff's Motion for Preliminary Injunction. This motion is supported by the record before the Court, which shows that the Defendants have failed to

respond within the time period set by the Court and have sought an extension from magistrate judge despite ignoring the Court's explicit directives and procedural requirements.

## II. LEGAL BASIS FOR ISSUANCE OF PRELIMINARY INJUNCTION

2.  Rule 65(a)(1) of the Federal Rules of Civil Procedure allows the court to issue preliminary injunction when notice has been given to the adverse party.

(a) Preliminary Injunction.

(1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.

Quoting Rule 65(a)(1) of the Federal Rules of Civil Procedure.

3.  The Defendants have been duly served with notice of the Motion for Preliminary Injunction but have failed to timely oppose or respond to the motion, despite the opportunity to do so.

4.  Under Rule 65(a)(2), the Court may grant a preliminary injunction upon the movant's showing, even in the absence of opposition, if the record supports such relief.

5.  The existing record demonstrates that Plaintiff faces imminent and irreparable harm from the Defendants' threats and ongoing unlawful conduct, as detailed in the associated pleadings.

## III. LEGAL BASIS FOR OBJECTION

6.  <u>Lack of Authority Under 28 U.S.C. § 636(b)(1)(A):</u> The order granting the extension was issued without proper authority because as a magistrate judge, Romero does not have jurisdiction to rule on dispositive motions or issues involving motions for preliminary injunctive relief as clarified by 28 U.S.C. 636(b)(1)(A), such dispositive matters must be explicitly decided by the district judge, not a magistrate judge.

> (b)
>
> (1) Notwithstanding any provision of law to the contrary—
>
> (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

Quoting 28 U.S.C. § 636(b)(1)(A).

7. <u>Plaintiff did not consent to a magistrate judge:</u> The Plaintiff did not consent, and will not consent, to a full-time or a part-time magistrate judge as required under 28 U.S.C. § 636(c)(1).

> (c) Notwithstanding any provision of law to the contrary—
>
> (1) **Upon the consent of the parties**, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. Upon the consent of the parties, pursuant to their specific written request, any other part-time magistrate judge may exercise such jurisdiction, if such magistrate judge meets the bar membership requirements set forth in section 631(b)(1) and the chief judge of the district court certifies that a full-time magistrate judge is not reasonably available in accordance with guidelines established by the judicial council of the circuit. When there is more than one judge of a district court, designation under this paragraph shall be by the concurrence of a majority of all the judges of such district court, and when there is no such concurrence, then by the chief judge.

Quoting 28 U.S.C. § 636(c)(1) [emphasis on bold].

8. <u>Procedural Defects and Lack of Due Process:</u> The Fifth Amendment prohibits deprivation of Plaintiff's life, liberty, or property, without due process of law. The order was

issued without an opportunity for Plaintiff to be heard, and was issued under color of official right, ignoring the Court's directives and violating procedural due process.

9.  <u>Nullity of the Order</u>: Because the order was issued beyond the authority given to a magistrate judge and without proper jurisdiction or procedural safeguards, it is null and void and should be vacated and disregarded by the Court.

## IV.   FACTUAL BACKGROUND

10. The Defendants threatened to initiate formal trespass proceedings against the Plaintiff if he refuses to consent to participate in the BLM Right-of-Way Program and pay a fee of $3,618. Additionally, they have stated that if the Plaintiff does not comply, they will remove the easement that he uses to access his land and impose a charge to cover the cost of erasing his access (ECF 01-8).

11. The Plaintiff sought judicial intervention from the Defendants' extortion and threat of robbery by filing a Complaint (ECF 01) on July 21, 2025.

12. The Plaintiff was automatically assigned a magistrate judge, assigned a case number, and the clerk issued summons on July 22, 2025.

13. The Plaintiff filed a Motion for Preliminary Injunction (ECF 10) on July 22, 2025, requesting immediate relief from the irreparable harm being caused by the Defendants.

14. Plaintiff gave notice to the Defendants of the Motion for Preliminary Injunction by leaving it at the person's office on July 23, 2025, pursuant to Rule 5(b)(2) (ECF 21).

15. Upon Plaintiff's filing of a motion for immediate injunctive relief, this case was rendered ineligible for consent to the jurisdiction of a magistrate judge; therefore, the court ordered this case to a district judge through random reassignment.

> DOCKET TEXT ORDER FOR CASE TO BE REASSIGNED. Under court policy, Plaintiff's filing of a motion for immediate injunctive relief renders this case ineligible for consent to the jurisdiction of a magistrate judge. Accordingly, the court orders this case be reassigned to a district judge through random reassignment. No attached document. Signed by Magistrate Judge Ceclilia M. Romero on July 25, 2025. (jed)

Quoting Docket Text entered on July 25, 2025, at 11:57 AM MDT (ECF18).

16. On July 25, 2025, at 12:12 PM Plaintiff filed a Motion to Compel Defendants to Answer the Complaint within 21 days of its filing listing the magistrate judge that was automatically assigned to the case without Plaintiff's consent before he was aware of the docket entry (Exhibit A – Email filing Motion to Compel dated July 25 2025).

17. On July 25, 2025, at 12:16 PM, text was entered into the docket stating that the presiding judge would be Judge Ted Stewart and "automatically referred" to a magistrate judge under 28 U.S.C. 636(b)(1)(B), which was Romero.

> NOTICE OF REASSIGNMENT - Case reassigned per ECF NO. 18 Docket Text Order. Case randomly assigned to Judge Ted Stewart and Magistrate Judge Cecilia M. Romero. Magistrate Judge is automatically referred under 28 U.S.C. 636(b)(1)(B). Magistrate Judge Cecilia M. Romero no longer assigned as the presiding judge to the case. Case number will now read 2:25-cv-00592-TS-CMR. Please make changes to document captions accordingly. Motions referred to Cecilia M. Romero. (jwt)

Quoting Docket Text entered on July 25, 2025, at 12:16 PM MDT (ECF 19).

18. On July 25, 2025, at 2:37 PM Plaintiff sent an email asking for clarification of how he should label the captions but received no response (Exhibit B – Email to Court Clerk for clarification dated July 25 2025).

19. The Plaintiff's Motion for Preliminary Injunction and Memorandum in Support (ECF 10) is a dispositive matter and the Court already ruled that the Motion was no longer

referred to the magistrate judge and that Judge Stewart would handle the motion and be assigned to the case.

> Motions No Longer Referred: [10] MOTION for Preliminary Injunction and Memorandum in Support. District Judge Ted Stewart will handle the motion. (jed)

Quoting Docket Text of August 1, 2025, at 10:49 AM MDT (ECF 22).

20. On July 30, 2025, Defendants confirmed they would not proceed with trespass proceedings but would not agree to a stipulated order granting the injunction to formalize the agreement. Instead, they offered to put it in writing, supported by a declaration under oath, in exchange for Plaintiff's withdrawal of the Motion for Preliminary Injunction (ECF 23-1, 23-2, 23-3).

21. In response to Defendants assertions that Plaintiff did not properly serve Defendants sued in their individual capacity, Plaintiff sought the Court's intervention by filing a Motion (ECF 23) on August 4, 2025, at 10:29 AM (Exhibit C – Email to Court Clerk filing Motion for Confirmation of Service dated August 4 2025) and informed the Defendants that he would not be withdrawing his Motion for Preliminary Injunction (ECF 25-2).

22. Defendants filed Motion for Extension of Time to Respond to Plaintiff's Motion for Preliminary Injunction (ECF 25) on August 4, 2025.

23. On August 5, 2025, Romero issued an Order (ECF 26), under color of authority, granting Defendants' Motion (ECF 25) despite being explicitly aware that the Plaintiff opposed the extension of time. Moreover, Romero lacks the authority to rule on the Motions regarding the Plaintiff's Motion for Preliminary Injunction, as such authority is explicitly precluded under 28 U.S.C. § 636(b)(1)(A).

24. Not only is Romero's order clearly erroneous or contrary to the law, but it was also issued without affording the Plaintiff an opportunity to respond, despite Romero's knowledge of the Plaintiff's opposition violating the Plaintiff's procedural rights and due process.

25. On August 6, 2025, Defendants failed to respond to the Plaintiff's Motion for Preliminary Injunction—14 days after the notice was given to them of the court action under Rule 12(a)(4)(A).

26. The Plaintiff's Motion for Preliminary Injunction is now closed, and the Plaintiff may move for judgment on the pleading under Rule 65(a)(2) and requests the court to proceed "on the papers," and issue the injunction by default based on the existing record.

## V.   ARGUMENT and AUTHORITY

### a.   Plaintiff Is Experiencing Irreparable Harm

27. The ongoing threats, coercive conduct—including actions by Defendants' attorney—and unlawful actions taken by Defendants have caused—and continue to cause—immediate and irreparable harm to the Plaintiff. While the Defendant's attorney has indicated an agreement to cease trespass proceedings, these assurances are meaningless without a formal court order. The Plaintiff cannot be assured of his safety or rights until such an order is issued; otherwise, the Defendants and their attorneys will continue to use delay tactics, including motions to extend deadlines and impose unnecessary restrictions, thereby obstructing any immediate relief.

28. The Plaintiff hereby states that unless he is given a formal, written order enjoining these unlawful threats and conduct, he will not feel safe or secure. Moreover, if the Plaintiff is

forced to withdraw his Motion for Preliminary Injunction under duress or threat of further delays, it will be only at the expense of his fundamental rights. The Defendants' tactics—refusing to abide by lawful procedures and attempting to manipulate the process—are designed solely to prolong this case and deny the Plaintiff the relief he is entitled to under the law.

29. The actions of the Defendants' attorney—refusing to support lawful procedures and threatening delay tactics—are not different in substance from the unlawful conduct the Plaintiff has already been subjected to by the Defendants themselves. The attorney's conduct appears to be a mere extension of the same coercive tactics used to intimidate and pressure the Plaintiff into abandoning his legal rights.

30. The Defendants' attorney's actions have made it clear: unless the Plaintiff agrees to withdraw his Motion for Preliminary Injunction, the Defendants will continue to delay and obstruct justice by filing motions requesting extensions or other procedural manipulations from a magistrate judge that lacks authority to grant such relief. This mirrors the unlawful demand made by the BLM, which pressured the Plaintiff to participate in their right-of-way program or face the removal of his access—an outright coercion designed to deprive him of his property rights and due process. The court should recognize this pattern of harassment and refrain from endorsing or enabling these tactics, which serve only to prolong the case and deprive the Plaintiff of lawful relief.

31. The relief sought through the Preliminary Injunction extends far beyond mere monetary damages. The BLM has already verbally agreed to cease the trespass proceedings; however, without a formal court order, the Plaintiff—and the public—remain subjected to ongoing fear, mental anguish, and uncertainty caused by the Defendants' unlawful actions. The

real harm lies in the pervasive anxiety, trauma, and loss of peace of mind inflicted by the Defendants' coercive tactics and threats, which continue to undermine the Plaintiff's sense of safety and trust in the legal system. An injunction is necessary not only to stop the immediate unlawful conduct but also to restore confidence that justice and lawful process will be upheld, thereby alleviating the profound psychological harm that cannot be remedied through monetary damages alone.

32. The circumstances surrounding the death of Robert LaVoy Finicum in January 2016, the death of James Redd in 2009, the unlawful incarceration of Phil Lyman, and similar cases demonstrate that when government overreach and abuses go unchallenged or unchecked, they result in profound and lasting trauma, fear, and injustice for those affected.

33. Plaintiff lives in constant fear that, without a formal and binding court order enjoining such unlawful conduct, the Defendants will continue to threaten, intimidate, or even unlawfully detain him and his property. The threats of trespass proceedings, potential removal of access, and unwarranted charges are not idle—they carry the real potential to cause catastrophic and irreversible harm, including property loss, loss of access to land, and physical or emotional distress. Importantly, these harms cannot be adequately remedied by monetary damages after the fact, because the damage—violations of constitutional rights, loss of property, and mental distress—occurs immediately and cannot be undone.

34. The experience of individuals like Finicum—who was unarmed and subjected to lethal force under suspicious and questionable circumstances—serves as a stark warning. When the government engages in or condones acts of violence or coercion without clear, written, and lawful restraint, they threaten fundamental rights and the integrity of the justice system itself.

The fear that these incidents could recur—especially if left unrestrained—imposes an unconscionable burden on the Plaintiff's health, safety, and well-being.

35. Moreover, the Defendants have maliciously and unlawfully painted the Plaintiff as a criminal in the public eye—similar to how they characterized others like Redd, as reported in the media (Exhibit D – Town mourns loss of doctor – Deseret News dated June 13, 2009). Like Redd, who was portrayed as a criminal, the Plaintiff is subjected to defamatory and false narratives aimed at tarnishing his reputation and justifying unlawful actions against him. These false characterizations are part of a broader pattern of abuse where government entities unlawfully paint innocent individuals as criminals, leading to social stigma, loss of livelihood, and irreversible damage to reputation and personal safety. Such actions further compound the irreparable harm suffered by the Plaintiff, who, like Redd, is left vulnerable and unprotected against arbitrary and abusive government conduct.

36. Highlighting the precariousness of asserting one's rights against the BLM, Phil Lyman, a San Juan County Commissioner who responded to constituents' needs, asserted his right to peaceful protest, and sought BLM permission, was nonetheless sentenced to ten days in jail and three years of probation for what he maintained was a lawful use of public lands (Exhibit E – Judge sentences San Juan Commissioner Phil Lyman to 10 days in jail, 3 years of probation – Deseret News, December 18, 2015). This parallel demonstrates the vulnerability Plaintiff faces by attempting to exercise his own lawful right to access his property via his established easement. You can find the truth by watching a documentary here: https://youtu.be/NRO7jFLPMVA?si=u4VzGwdKVTaiDnYu. This case highlights the ongoing

tension surrounding federal land management and the risks faced by individuals who challenge those policies.

37. This pattern of unlawfulness, if left unchallenged, perpetuates a climate of fear and injustice, deterring free exercise of rights and endangering lives. When the government engages in or condones acts of violence, defamation, or coercion without clear, lawful restraint, they threaten not only individual rights but the very foundation of justice and due process. The fear that these incidents could recur—especially if left unrestrained—imposes an unconscionable burden on the Plaintiff's health, safety, and well-being.

38. Furthermore, the lack of a formal, legally binding order or guarantee that the Defendants' threats will cease leaves the Plaintiff in a state of ongoing vulnerability, which rises to the level of irreparable harm. The court's intervention is paramount to break this cycle of intimidation and to restore a measure of security, certainty, and the rule of law. Only through an official court order can the Plaintiff live without the persistent fear that government misconduct or threat will continue unchecked.

39. The immediate and ongoing nature of these threats, coupled with the grave risk of irreparable injury—both physical and psychological—necessitates urgent judicial relief. The court must act to prevent further injustice, preserve the Plaintiff's rights, and uphold the integrity of the judicial process before irreparable harm becomes irrevocable.

   b. **The Magistrate Judge's Order is Clearly Erroneous and Contrary to Law.**

40. Romero's order on August 5, 2025, granting the Defendant's Motion for Extension of Time (ECF 25) was issued without authority and in clear violation of applicable law. Under 28 U.S.C. § 636(b)(1)(A), magistrate judges are limited to non-dispositive matters;

even if Plaintiff had consented to a magistrate judge, which he did not, dispositive issues such as the motion for preliminary injunction are reserved for the district judge, Judge Ted Stewart, who has full judicial authority.

41. The Court's own docket confirms that Plaintiff's Motion for Preliminary Injunction (ECF 10) was a dispositive matter that, by law, falls beyond Romero's authority even if Plaintiff had consented to a magistrate judge. The plain language of the Rules of Civil Procedure and Federal statutes explicitly state that a magistrate judge cannot issue orders resolving dispositive motions or effectively delaying or denying injunctive relief without full judicial review.

42. The Court's practice of automatically assigning a judge—without explicit notification or obtaining the Plaintiff's clear consent—further contributes to confusion and essentially pressures the Plaintiff into submission. Such an automatic assignment tactic can mislead or intimidate individuals into believing they have no choice or control over who will decide their case. In this instance, however, the Court did provide notice of the available judicial settlement conference (ECF 28), clearly demonstrating that the Plaintiff was capable of receiving the Court's communication and responding appropriately if he chose so to do so. The Court's tactic of automatic assignment creates a false impression that the Plaintiff has no voice or option in selecting who will hear the case, which is contrary to the fundamental rights underpinning due process.

43. The Court's issuance of the Order on August 5, 2025, permitting the Defendant's extension and thus effectively delaying or denying the preliminary injunctive relief, was conducted without an opportunity to respond and contrary to the Fifth Amendment's guarantee of

procedural due process. The Fifth Amendment prohibits deprivation of life, liberty, or property without due process of law—a fundamental right that includes the right to notice and a fair hearing before adverse decisions are made.

44. Courts have long recognized that ruling on dispositive issues without proper authority or notice is void ab initio (void from the beginning) and constitutes a violation of due process. This Court's order, issued without affording Plaintiff an opportunity to be heard, by a magistrate judge who has no authority and who the Plaintiff has not consented to is unlawful and should be vacated.

### c. **Defendants' Head-Scratching Procedures**

45. The Defendants' ludicrous claim that a 30-day extension is supported by "good cause" is simply not credible. It strains credulity to believe that the Defendants require an entire month to formalize their representation, particularly when the Plaintiff, acting pro se, has already illuminated the core flaw in their argument—that federal employees may not be represented at taxpayer expense when sued in their individual capacity for actions that fall outside the scope of their employment, as clearly outlined in 28 CFR § 50.15 (ECF 25-2). It defies logic to suggest that extortion and attempted robbery, as the Defendants' actions suggest, are now part of their official job descriptions, warranting taxpayer-funded legal defense. The American taxpayers should not be forced to subsidize what is transparently a strategic delay tactic, designed to prolong this case, obstruct justice, and provide Ms. Rice with unwarranted time to concoct a defense for which there is no legally valid basis. Moreover, this extension unfairly perpetuates the Plaintiff's fear and anxiety, born out of the inefficient processes and perceived incompetence of the Executive Department, and forcing them to live under the constant threat of continued

abuses and intimidation. In essence, the Defendants cynically seek to use taxpayer funds to shield themselves from liability in a matter arising from their own wrongful conduct, while the Plaintiff continues to live in apprehension and unrest.

### d. The Unlawful Order Effectively Denies the Plaintiff's Right to Immediate Relief

46. Plaintiff filed his Motion for Preliminary Injunction on July 22, 2025, seeking urgent relief from ongoing threats and harm caused by Defendants' repeated threats of trespass, unlawful access charges, and other coercive tactics aimed at depriving Plaintiff of his land and rights.

47. The Defendants' threats—namely, the suppression of access, the imposition of unwarranted fees, and the pervasive fear stemming from the circumstances of Finicum's death—constitute ongoing and irreparable injury (Exhibit F – Jury Selection to Begin for FBI Agent Charged in Finicum Shooting – OPB dated July 23 2018). These actions directly threaten to cause immediate and irreversible damage to the Plaintiff's property rights, personal safety, mental health, and constitutional protections. Such persistent and unjustifiable conduct clearly satisfies the requirements for injunctive relief under Rule 65, as monetary damages would be insufficient to remedy the ongoing injury, and the threat of further harm remains imminent unless the Court intervenes to preserve the Plaintiff's rights.

48. The Court's refusal to grant injunctive relief—particularly based on an unlawfully issued and procedurally deficient order—acts as a de facto denial of these rights. The Plaintiff's basic rights to property, free access, and protection from government overreach are being directly endangered by Defendants' continued conduct.

## VI.   REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests:

49. That the Court Vacate the Order (ECF 26) granting the Defendants' extension of time and deny any such extension.

50. That the Court, given the compelling evidence supporting the motion, the lack of opposition, and the urgent need to prevent irreparable harm, grant this Motion for Entry of Preliminary Injunction to avoid unnecessary cost or delay.

51. The Court order the amendment of internal procedures to ensure that magistrate judges are **not** automatically assigned to cases in federal court unless all parties have provided their explicit consent and have demonstrated a clear understanding of their right to choose, in strict accordance with 28 U.S.C. § 636(c)(1).

52. The Court order the immediate production of all communications—including but not limited to phone records, text messages exchanged through any and all applications, emails, letters, memoranda, meeting minutes, and notes, regardless of form or medium—between the Assistant United States Attorney representing the Defendants and Magistrate Judge Cecilia M. Romero (or any member of her staff) regarding the Defendants' Motion for Extension of Time (ECF 25), as well as any and all discussions, solicitations, or considerations concerning this motion. This production must include, but not be limited to, communications reflecting or relating to:

(a) The rationale, justification, or basis for the Defendants' request for an extension of time.

(b) Discussions regarding the authority of the magistrate judge to rule on such a request.

(c) Any effort or intention to seek or influence the magistrate judge's ruling on the motion.

(d) Any communication relating to procedural strategy or potential delays in the case.

(e) Any indication of potential bias, undue influence, or impartiality.

This request extends to all documents and information—electronically stored or otherwise—created, received, or reviewed by any employee, staff member, or representative of the Assistant United States Attorney, the Magistrate Judge's chambers, or any third party who may have been involved in these communications.

53. The Court declare that the Defendants' actions—coercing the Plaintiff to participate in the ROW Program and threatening to remove his access if he refuses—deem their actions to be outside the scope of their federal employment. Having thus acted in their individual capacities, the Defendants must retain legal counsel at their own expense. Taxpayer-funded representation in this matter contravenes 28 CFR § 50.15 and amounts to an unjustifiable misappropriation of public resources for their private defense.

54. Grant such other relief as the Court deems proper and just.

## VII.  REPRESENATIONS TO THE COURT (Rule 11)

I HEREBY CERTIFY that, under Federal Rule of Civil Procedure 11 and applicable local rules, the foregoing motion and memorandum in support is presented in good faith, for proper purposes, and based on existing law and factual support, and that to the best of my knowledge, information, and belief, formed after reasonable inquiry, the statements contained herein are true and correct.

Dated: August 7, 2025

Respectfully submitted,

  /s/ Steven Huber

STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro Se

## Certificate of Service

I hereby certify that on this 7th day of August, 2025, I electronically filed the PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION AND OBJECTION TO MAGISTRATE JUDGE'S ORDER [26] GRANTING [25] DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION with the Clerk of the Court under the filing and electronic notification procedures outlined under DUCivR 5-1, which will send notification of such filings to all registered participants in this case.

Additionally, I certify that I caused a true and correct copy of the document to be served by mailing it to the following parties pursuant to Rule 5(b)(c):

United States Government, DOI, BLM
U.S. Attorney General – District of Utah
Home Office
111 South Main Street
Suite 1800
Salt Lake City, Utah 84111-2176
Anne.Rice@usdoj.gov
Amanda.Berndt@usdoj.gov

Elija Waters
District Manager of the BLM
Vernal Field Office
170 South 500 East
Vernal, Utah 84078
utvnmail@blm.gov

Patrick Ahrnsbrak
Supervisory Realty Specialist of the BLM
Vernal Field Office
170 South 500 East
Vernal, Utah 84078
pahrnsbrak@blm.gov

Gerald Kenczka
AFM Lands and Minerals of the BLM
Vernal Field Office
170 South 500 East
Vernal, Utah 84078
jkenczka@blm.gov

Rene Arce
Field Manager of the BLM
Vernal Field Office
170 South 500 East
Vernal, Utah 84078

rarce@blm.gov

Executed on this 7th day of August 2025.

  /s/ Steven Huber
STEVEN HUBER
138 East 12300 South
C275
Draper, Utah 84020
801-688-3594
traciehalvorsen@outlook.com
Plaintiff Pro *Se*