IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEVEN HUBER,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES GOVERNMENT, et al.,<br><br>　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTIONS FOR PRELIMINARY INJUNCTION<br><br><br>Case 2:25-cv-592-TS-CMR<br><br>District Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter is before the Court on two Motions for a Preliminary Injunction filed by Plaintiff Steven Huber.[1] For the reasons stated below, the Court will deny both Motions.

## I.  BACKGROUND

Plaintiff filed suit against Defendants on July 21, 2025, for their purported interference with his ability to access his property.[2] Defendants include the Department of the Interior, the Federal Bureau of Land Management (the "BLM"), and employees of the BLM in both their individual and official capacities. Plaintiff owns several parcels of land in Uintah County, Utah, which the United States originally conveyed under the Homestead Act of 1862. The parcels are landlocked by surrounding property that is either private- or government-owned.[3] Lapoint Bench Road is a public road located to the east side of Plaintiff's parcels. In 2023, Plaintiff constructed a 414-foot road from Lapoint Bench Road to his property to enable access to his property (the "Access Road"). Plaintiff asserts that the Access Road "represents the only practical route that

---

[1] Docket Nos. 10, 30.

[2] Docket No. 1.

[3] Docket No. 10, at 3.

has historically provided access to the property."[4] Though Defendants dispute this assertion.[5] The Access Road runs through land managed by the BLM, and Plaintiff did not seek pre-authorization from the BLM to construct it.

On June 2, 2025, Defendant Elija Waters, BLM District Manager, sent a letter notifying Plaintiff that the BLM had "initiated trespass proceedings against [him] for unauthorized use of public lands" due to his construction of Access Road.[6] The letter directed Plaintiff to respond within 30 days with any information or evidence supporting that he is not a trespasser, and warned that failure to do so may result in trespass penalties and a citation. The letter further stated that Waters was "confident" they could "work together in arriving at an agreeable solution."[7]

Plaintiff responded asserting, as he does in his Motions, that the conveyance under the Homestead Act included an "implied easement" through the BLM land.[8] Plaintiff subsequently met with BLM employees, who insisted that Plaintiff submit an application and the associated fees to obtain the right-of-way access for the Access Road, or else be subject to trespass proceedings. Plaintiff asserts that the various associated fees total $3,618. Plaintiff did not submit the requested application but instead filed this lawsuit.

Plaintiff's first Motion for Preliminary Injunction ("First Motion") seeks an order enjoining Defendants from interfering with Plaintiff's purported rights by prohibiting Defendants from threatening or initiating trespass proceedings or otherwise requiring Plaintiff to apply and

---

[4] *Id.*

[5] Docket No. 49, at 10 n.49 ("Huber has motorized access to his property via the Ouray Valley Canal Road and has nonmotorized access to his property across BLM-managed land.").

[6] Docket No. 1-6.

[7] *Id.*

[8] *Id.*

pay fees related to his use of the Access Road. Following Plaintiff's dissatisfaction with the Magistrate Judge referred on this case, Plaintiff filed a Second Motion for Preliminary Injunction (Second Motion) which, in addition to requesting the relief stated in the First Motion, takes issue with decisions and orders issued by the Magistrate Judge to whom this case is properly referred under 28 U.S.C. 636(b)(1)(B); seeks an amendment of certain Court procedures and practices; seeks the immediate production of certain communications between the government's attorney and the Magistrate Judge's chambers; and seeks a declaration from the Court that "Defendant's actions . . . are outside of their federal employment."[9]

## II. DISCUSSION

To obtain a preliminary injunction or a temporary restraining order under Rule 65 of the Federal Rules of Civil Procedures, the movant has the burden of demonstrating: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.[10] "[A] preliminary injunction is an extraordinary remedy"[11] that is appropriately issued only when presented with a "genuinely extraordinary situation."[12] Accordingly, "the right to relief must be clear and unequivocal."[13]

---

[9] Docket No. 30, at 16.

[10] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (citing *Greater Yellowstone Coal. v. Flowers,* 321 F.3d 1250, 1255 (10th Cir. 2003)).

[11] *Id.* (quoting *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir. 1984)).

[12] *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).

[13] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal.*, 321 F.3d at 1256).

"In examining these factors, courts have consistently noted that '[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'"[14] "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'"[15] "Irreparable harm is not harm that is 'merely serious or substantial.'"[16] Instead, "[t]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm."[17]

In Plaintiff's First Motion, he asserts conclusively that the "ongoing deprivation of [his] fundamental rights," including his rights to property, access, and due process, "even for a single day, constitutes irreparable harm."[18] Plaintiff fails to provide any authority to support the proposition that interference with one's access to their property constitutes irreparable harm.[19] However, even if the Court were to find that interference with property access amounts to irreparable harm, and that Plaintiff had been deprived of such access by the BLM's application requirement and assessment of fees, the BLM is not currently engaging in any such interference. Both Defendants' Response and Plaintiff's Second Motion acknowledge that Defendants have

---

[14] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quoting *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990)).

[15] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985)).

[16] *Id.* (quoting *Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1250 (10th Cir. 2001)).

[17] *Id.* (internal quotation marks and citation omitted).

[18] Docket No. 10, at 7.

[19] Regarding irreparable harm, Plaintiff cites to *Marbury v. Madsen*, 5 U.S. 137, 163 (1803) and *Pa. Coal Co. v. Mahon*, 20 U.S. 393 (1922), neither of which supports the proposition that interfering with access to one's private property constitutes irreparable harm for purposes of a preliminary injunction.

agreed not to initiate any trespass proceedings until the instant case is resolved.[20] Therefore, Plaintiff is not experiencing any "certain," "actual," or "imminen[t]" harm in the form of property access interference by the BLM, as would be required to support the "extraordinary remedy" of a preliminary injunction.

Despite acknowledging that the BLM is not presently preventing access to his property, Plaintiff argues that the mere threat that Defendants *could* decide to pursue trespass procedures is causing irreparable harm. The harm Plaintiff asserts he is suffering and will continue to suffer without the issuance of an injunction includes: a lack of safety and security, "fear, mental anguish, and uncertainty;" "anxiety, trauma, and peace of mind;" "undermined . . . trust in the legal system;" and "profound psychological harm."[21]  Plaintiff further asserts that "without a formal and binding court order . . . Defendants will continue to threaten, intimidate, or even unlawfully detain [Plaintiff] and his property."[22] Seemingly in support, Plaintiff describes historical examples of wholly unrelated disputes between individuals and government entities that were reported in the news.[23]

Even accepting that Plaintiff is suffering mentally and emotionally due to his dispute with the BLM, to go beyond a "serious or substantial" harm, as is required to show irreparable harm, Plaintiff must provide specific factual allegations to support the necessary showing of certain, great, and actual damages.[24] Plaintiff has failed to do so. Instead, Plaintiff has used a variety of

---

[20] Docket No. 30, at 7; Docket No. 49, at 10.

[21] Docket No. 30, at 8–9.

[22] *Id.* at 9.

[23] *Id.* at 10 ("The fear that these incidents could recur—especially if left unrestrained— imposes an unconscionable burden on the Plaintiff's health, safety, and well-being.").

[24] *DeNovellis v. Shalala*, 135 F.3d 58, 64 (1st Cir. 1998) ("Moreover, Plaintiff's conclusory mention of 'emotional trauma,' . . . is . . . insufficient to constitute irreparable harm."); *United States v. Nemeckay*, No. 2:20-CR-00278-DBB, 2021 WL 5961463, at *2 (D.

conclusive phrases synonymous or related to mental or emotional anguish that are largely

unconnected to any relevant factual averments. Notably, Plaintiff's citations to historical events

that are factually distinguishable from and wholly unrelated to the dispute in question is squarely

theoretical, if not fantastical, and therefore does not provide the requisite support.

Plaintiff has also failed to provide any legal authority to support that the mental or

emotional anguish asserted by him can constitute irreparable harm. A survey of relevant case law

supports the opposite. While some courts have found that emotional or psychological damage

may demonstrate irreparable harm in cases plainly distinguishable from the case at hand,[25] courts

commonly reject a plaintiff's assertion that psychological anguish or the like is sufficient to

constitute irreparable harm.[26]

---

Utah Dec. 16, 2021) ("[The plaintiff] argues that she is suffering irreparable harm because she is now forced to live in low-income housing resulting in anxiety and stress. She provides no factual details of any kind regarding this argument.") (internal quotation marks omitted).

[25] *See e.g., EEOC v. Chrysler Corp.*, 546 F. Supp. 54, 70–71 (E.D. Mich. 1982) (holding that "psychological and physiological distress" suffered by the claimants in an age-discrimination case could constitute irreparable harm); *Moore v. Consol. Edison Co. of N. Y., Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) (noting that "claims of emotional and physical harm may in some circumstances justify preliminary injunctive relief"); *Pollis v. New Sch. For Soc. Rsch.*, 829 F. Supp. 584, 598 (S.D.N.Y. 1998) (rejecting the argument that "non-economic claims such as emotional or psychological damage can never, as a matter of law, demonstrate irreparable harm sufficient to justify a preliminary injunction").

[26] *See e.g., Andersen v. Olympus at Daybreak*, No. 2:25-CV-00178-RJS-DBP, 2025 WL 1384288, at *3 (D. Utah May 13, 2025) ("Although the court is mindful of the mental toll litigation can exact on affected parties, stress does not constitute the kind of irreparable harm contemplated by Rule 65."); *Nathreen v. Denver Hous. Auth.*, No. 1:25-CV-00051-RMR, 2025 WL 53341, at *3 (D. Colo. Jan. 9, 2025), *appeal dismissed sub nom. Nakanwagi v. Denver Hous. Auth.*, No. 25-1021, 2025 WL 1898250 (10th Cir. Mar. 28, 2025) (finding no irreparable harm where Plaintiff alleged that she will suffer irreparable harm if her request for relief is denied because she "faces imminent eviction and homelessness, which would exacerbate her severe physical and mental conditions"); *Mitchell v. Fowlkes*, No. 5:13-CV-32, 2013 WL 4495843, at *2 (M.D. Ga. Aug. 20, 2013) ("Although Plaintiff contends that he is suffering and will continue to suffer from unspecified mental and emotional problems, Plaintiff's conclusory allegations are remote and speculative, rather than actual and imminent."); *Edward v. Dubrish*, No. 07-cv-02116-REB-KMT, 2009 WL 598336, at *2 (D. Colo. Mar. 6, 2009) (holding that the plaintiff failed to prove that "emotional stress and mental anguish" is "irreparable" and "certain, great,

Further, Plaintiff's assertion that a preliminary injunction is necessary because Defendants could "threaten, intimidate, and even unlawfully detain" him without an injunction is theoretical, at best. The only specific actions Plaintiff has noted are Defendants' efforts to require Plaintiff to apply and pay fees to keep his Access Road, and their efforts in defending themselves in this litigation. While Plaintiff has characterized these efforts in harsh terms, the Court has seen no evidence to support that Defendants' behavior is unlawful or otherwise causing irreparable harm.

Because Plaintiff's purported harms are either unsupported by specific factual allegations, wholly theoretical, or otherwise fall far short of what is required to demonstrate irreparable harm, Plaintiff has failed to make the requisite showing of irreparable harm to obtain a preliminary injunction.

Regarding the unrelated requests included in the Second Motion: First, the Court has already issued an order overruling Plaintiff's objection to the Magistrate Judge's jurisdiction and orders.[27] Second, Plaintiff provides no legal or logical basis to support his requests for an amendment of certain Court procedures and practices, the immediate production of certain communications between the government's attorney and the Magistrate Judge's chambers, or a declaration from the Court that Defendant's actions are outside the scope of their federal employment. Further, these issues are not properly raised in a motion for a preliminary injunction. These requests are accordingly rejected.

---

actual and not theoretical") (internal quotation marks and citation omitted); *Reid v. IRS*, No. Civ. A. 93-cv-01972, 1993 WL 655028, at *2 (D. Colo. Nov. 8, 1993) ("Plaintiffs, while alleging that they are suffering emotional distress because of the IRS's actions in pursuing the collection of their overdue taxes by way of liens and wage garnishment, have not established that they will suffer irreparable harm as required under the law.").

[27] *See* Docket No. 59.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motions for Preliminary Injunction (Docket Nos. 10, 30) are DENIED.

DATED this 30th day of March, 2026.

BY THE COURT:

Ted Stewart
United States District Judge